**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| LISA A. VALENTI, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 02:03cv0748 |
| | ) | |
| TRIANGLE CIRCUITS OF PITTSBURGH, | ) | |
| INC.; THE MILLENNIA GROUP, INC., | ) | |
| t/d/b/a TRIANGLE CIRCUITS OF | ) | |
| PITTSBURGH, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER OF COURT**

August 26, 2005

Presently before the Court for disposition is the MOTION FOR SUMMARY

JUDGMENT, with brief in support, filed by Defendants Triangle Circuits of Pittsburgh, Inc.

and The Millennia Group, Inc., t/d/b/a Triangle Circuits of Pittsburgh (collectively hereinafter

referred to as "Triangle Circuits") (*Document Nos. 10 and 11,* respectively), and Plaintiff's

brief in opposition (*Document No. 16*).  After careful consideration of Defendants' motion, the

filings in support and opposition thereto, the memoranda of the parties, the relevant case law,

and the record as a whole, the Court finds that there is not sufficient record evidence upon

which a reasonable jury could return a verdict for Plaintiff, Lisa A. Valenti, on her claims of

discrimination due to her sex.   Therefore, the Court will grant the motion for summary

judgment of Defendants Triangle Circuits of Pittsburgh, Inc. and The Millennia Group, Inc.,

t/d/b/a Triangle Circuits of Pittsburgh, Inc.

PROCEDURAL BACKGROUND

Plaintiff filed this civil rights action on May 23, 2003, in which she alleges that sexually harassing conduct by her "supervisors" and co-workers was of such severity that she was forced to resign, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"), and the Pennsylvania Human Relations Act, 42 P.S. § 951, *et seq.* ("PHRA"). Defendants have filed the instant motion for summary judgment, in which they contend that Plaintiff is unable to establish a *prima facie* case on either her Title VII and/or PHRA claim.

BACKGROUND

The facts relevant to this discussion, and viewed in the light most favorable to Plaintiff, are as follows. Plaintiff was an employee with Triangle Circuits from October 1995 until March 7, 2002, and worked at all times as a laborer in the Image Department. At the time she commenced her employment, she was provided with a Triangle Circuits' "Employee Handbook" ("Employee Handbook I"). In 1999, the Employee Handbook was revised and the revised edition was in effect at the time Plaintiff's employment with Triangle Circuits terminated in 2002. ("Employee Handbook II"). Employee Handbook I and II contain the following identical Sexual Harassment Policy:

SEXUAL HARASSMENT

Harassment on the basis of sex is illegal and will not be tolerated at Triangle Circuits. Unwelcome sexual advancements, requests for sexual favors and other verbal or physical conduct of a sexual nature constitute sexual harassment when:

> Submission to such conduct is either explicitly or implicitly a term or condition of an individual's employment; or
>
> Submission to or rejection of such conduct is used for the basis of employment decisions; or
>
> Such conduct unreasonably interferes with an individual's work performance or creates an intimidating, hostile or offensive working environment.
>
> Any sexual harassment should be promptly reported to your supervisor, your supervisor's manager (supervisor), Human Resources or any other level of management up to and including the President of the Company. Claims of sexual harassment will be promptly investigated and corrective action will be taken as warranted. To the extent possible, such claims will be kept confidential and the privacy of the individuals involved will be respected.
>
> Sexual harassment is extremely serious misconduct which will result in disciplinary action up to and including discharge.

Defs' Br. in Supp. of Mot. for Summ. J., Exhibit F, Sexual Harassment Policy. During her deposition, Plaintiff admitted to "skimming" through the Employee Handbook soon after being hired and stated that "I knew there was something in the book about [sexual harassment], but I don't remember recalling reading it." *See* Valenti Depo. at 20, 36.

Plaintiff contends that the allegedly harassing conduct began approximately four months before her employment terminated, in approximately November 2001 at the time Dan Laux ("Laux") became the Group Leader of the employees in the Image Department. Both Plaintiff and Laux had applied for the Group Leader position; but by Plaintiff's own admission, Laux was considerably more experienced and was appointed to the Group Leader position instead of Plaintiff.

The responsibilities of the Group Leader do not involve supervisory responsibilities, but rather include making sure that all jobs are completed and that all employees within the

3

Image Department are working.  The Group Leader does not decide employee shifts or schedules, and does not evaluate employee performance or make any decisions with regard to personnel or salary.  *See* Skelley Depo., at  76.

Plaintiff's last day of employment with Triangle Circuits was March 7, 2002.  Prior to this date, Plaintiff had made arrangements with her immediate supervisor, John Macura ("Macura"), that on March 7, 2002, she would be allowed to arrive at work one-half hour earlier than the beginning of her shift so that she could leave one-half hour before the end of her shift.  Macura advised her that she would be permitted to leave work early as long as there were no "hot" (i.e., emergency) jobs to complete prior to her normal shift change.

On March 7, 2002, at 4:00 p.m., which was one-half hour before the end of Plaintiff's shift, there was a "hot" job that needed to be finished.   Plaintiff began to "rant and rave" at Laux and punched out at 4:01 p.m., before the end of her shift and before finishing the "hot" job.

At approximately 4:20 p.m. that day, Plaintiff called Susan Skelley, Human Resources Manager for Triangle Circuits, and reported that "Dan was 'yelling and screaming' at her for leaving early" and that she had "never been treated so badly or mean in [her] life by anyone . . . ."  Def's Br. in Support of Mot. for Summ. J., Exhibit J.

Later that evening, at 8:28 P.M., Plaintiff called the "call off extension" at Triangle Circuits and left a message that she was calling off work for Friday, March 8, 2002.

On Friday, March 8, Plaintiff again called Skelley and, for the first time, reported that she had been sexually harassed in her department.  Plaintiff told Skelley that she had proof of

the harassment as she had been recording everything in a notebook.  Skelley told Plaintiff that

she would call her back after Skelley had had an opportunity to investigate the matter.

Sometime before lunch, Skelley called Plaintiff and left a message on her answering

machine at home, in which she asked that Plaintiff return her call because she needed to talk to

her.  Plaintiff did not call back.  Later in the day, Skelley again called Plaintiff and left another

message in which she asked Plaintiff "to come in on Monday (March 11) at 8:00 A.M. so we

can talk about this situation in more detail and bring in the documentation that you have." *Id.*

Plaintiff did not report to work on March 11, 2002,  but rather again called the "call

off extension" at 6:43 A.M. on the morning of March 11th and reported that she was taking a

vacation day.  Skelley again attempted to reach Plaintiff at home, but to no avail.  Skelly left a

message on Plaintiff's answering machine stating that "we need to talk about this.  I cannot let

you come back to work until we talk."  *Id*.  Plaintiff never responded.

On Tuesday, March 12, 2002, a certified letter of resignation from Plaintiff was

delivered  to Skelly in which Plaintiff stated that she was being forced to leave as a result of

"constant and pervasive sexual harassment" in the workplace.

Plaintiff alleges that the harassment she experienced included inappropriate

comments, unwanted touching and exposure to pornographic material.  During her deposition,

Plaintiff specifically complained about the conduct of Dan Laux, Group Leader; Robert

Nahrwold, Vice President;  Dan Kaplan, Maintenance Supervisor; and David Cameron, a

machinist.   By Plaintiff's own admission, however, she never reported the alleged harassing

conduct to any supervisor, manager, human resources personnel or a co-worker. *See* Valenti

depo, at 66 88, 96, 99.

5

## STANDARD OF REVIEW

Summary judgment should be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  Thus, the Court's task is not to resolve disputed issues of fact, but to determine whether there exist any factual issues to be tried.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-49 (1986).  The non-moving party must raise "more than a mere scintilla of evidence in its favor" in order to overcome a summary judgment motion.  *Williams v. Borough of West Chester*, 891 F.2d 458, 460 (3d Cir. 1989) (*citing Liberty Lobby*, 477 U.S. at 249)).  Further, the non-moving party cannot rely on unsupported assertions, conclusory allegations, or mere suspicions in attempting to survive a summary judgment motion.  *Id.* (*citing Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).  Distilled to its essence, the summary judgment standard requires the non-moving party to create a "sufficient disagreement to require submission [of the evidence] to a jury." *Liberty Lobby*, 477 U.S. at 251-52.

## DISCUSSION

Title VII makes it unlawful for an employer "to discriminate against any individual with respect to his [or her] compensation, terms, conditions, or privileges of employment because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1).[1]  In order for a plaintiff to establish a hostile work environment, he or she must

---

[1]     Pennsylvania courts generally interpret the PHRA in accordance with its federal counterparts.  *See Kelly v. Drexel Univ.*, 94 F.3d 102, 104 (3d Cir. 1996).

(continued...)

show harassing behavior "sufficiently severe or pervasive to alter the conditions of [her] employment." *Pennsylvania State Police v. Suders*, 542 U.S. 129, 124 S. Ct. 2342 (2004) (*citing Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986); *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 22 (1993)).  In addition, an employee who seeks to demonstrate a constructive discharge, as does Plaintiff in the case at bar, must also show that "the abusive working environment became so intolerable that her resignation qualified as a fitting response." *Id.*   In particular, the plaintiff must demonstrate that (1) she suffered intentional discrimination because of her gender; (2) the discrimination was pervasive and regular; (3) the discrimination detrimentally affected her; (4) the discrimination would have detrimentally affected a reasonable person of the same protected class in her position; and (5) there is a basis for respondeat superior liability.  *Kunin v. Sears Roebuck & Co.*, 175 F.3d 289, 295 (3d Cir. 1999*)*.

In determining whether an environment is sufficiently hostile or abusive, courts must look to the totality of the circumstances, including the "frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Faragher v. City of Boca Raton*, 524 U.S. 775, 787-88 (1998).  The conduct "must be extreme to amount to a change in the terms and conditions of employment."  *Id*.

The standard of employer liability under Title VII varies depending on whether the alleged harasser was a supervisor or merely a co-worker. *See, e.g., Faragher v. City of Raton*, 524 U.S. 775 (1998).

---

[1](...continued)
    Therefore, the disposition of Plaintiff's Title VII claim applies with equal force to
    her PHRA discrimination claim.

1.      Vicarious Liability of Employer for Supervisory Persons

Neither the United States Supreme Court nor the Court of Appeals for the Third

Circuit has explicitly defined the term "supervisor" as it is used in the context of Title VII.   The

guidelines issued by the Equal Employment Opportunity Commission ("EEOC") state that:

"[a]n individual qualifies as an employee's 'supervisor' if: a. the individual has authority to

undertake or recommend tangible employment decisions affecting the employee; or b. The

individual has authority to direct the employee's daily work activities."  EEOC Enforcement

Guidance: Vicarious Employer Liability for Unlawful Harassment by Supervisors, Following

Section 615 of the Compliance Manual; (www.eeoc.gov.docs.harassment.html ).   Various

courts have held that most obvious supervisory powers include the power "to hire and fire, and

to set work schedules and pay rates . . . ." *Sofia v. McWilliams*, 2003 WL 1818414 ( E.D. Pa.

2003).  *See, e.g.*, *Deffenbaugh-Williams v. Wal-Mart Stores, Inc.*, 156 F.3d 581, 592 (5th Cir.

1998) (where employee had authority to discharge plaintiff, employee was a supervisor under

*Faragher*); *Phillips v. Taco Bell Corp.*, 156 F.3d 884, 888 (8th Cir. 1998) (store manager was a

supervisor for Title VII liability purposes due to degree of authority he exercised over the

plaintiff); *Lissau v. Southern Food Serv., Inc.*, 159 F.3d 177, 179 (4th Cir.1998) (where

harasser had authority to "hire and fire sales representatives" such as the plaintiff, harasser was

a supervisor for purposes of Title VII).

a.      *Dan Laux, Group Leader*

 Applying these standards here, the Court finds that Plaintiff has presented no

evidence from which a reasonable juror could conclude that Dan Laux was her "supervisor" for

purposes of Title VII employer liability.  Although Laux was the Group Leader of the Image

Department, he did not enjoy any supervisory authority over any employee nor did he have the authority to make any decisions affecting the terms and conditions of Plaintiff's employment, i.e., the authority to hire, fire, promote, demote, discipline or transfer Plaintiff. *See* Skelley Depo., at 75-76.

      b.    *Robert Nahrwold, Vice President of Triangle Circuits*

Plaintiff alleges that the conduct of Robert Nahrwold, Vice President of Triangle Circuits, created a hostile work environment. In *Ellerth/Faragher,* the United States Supreme Court held that "[a]n employer is subject to vicarious liability to a victimized employee for an actionable hostile environment created by a supervisor with immediate (or successively higher) authority over the employee." *Ellerth*, 524 U.S. at 765; *Faragher,* 524 U.S. at 807. As Vice President of Triangle Circuits, the Court holds for purposes of this opinion only that Nahrwold is a "supervisor" for purposes of Title VII liability.

Plaintiff alleges that on one occasion Nahrwold engaged in "inappropriate" conduct when he showed her a "picture of a naked woman on a motorcycle." Both the Supreme Court and our appellate court have held that " 'simple teasing,' offhand comments, and isolated incidents (unless extremely serious)" are not actionable under Title VII. *Abramson v. William Paterson College of New Jersey,* 260 F.3d 265, 280 (3d Cir. 2001) *(quoting Faragher v. City of Boca Raton*, 524 U.S. 775, 788). Instead, the harassing behavior must be "sufficiently severe or pervasive to alter the conditions of [plaintiff's] employment." *Pennsylvania State Police v. Suders,* 542 U.S. 129, 124 S. Ct. 2342, 2347 (2004).

Plaintiff testified that Nahrwold and her husband had discussed motorcycles on several occasions and that Nahrwold had never been anything other than friendly towards her

and her husband.  Nahrwold testified that both he and Plaintiff are avid motorcyclists and,

immediately prior to showing Plaintiff the picture at issue, they had conversed about unusual

custom motorcycles people have fabricated, *to wit*:

> She told me about the custom motorcycles that she saw and she
> remembered that one looked like a '57 Chevy and it's just amazing what
> people do with Harley-Davidson and fabrication of bikes.
>
> So I said, wow, that's something.  I said - you know, we just kept talking.
> I said, you know, when you're done, if you want, stop up.  My friend sent
> me an e-mail.  I have a picture of a Harley, I'll show it to you.  It's all
> custom, you know.  She said, okay, and I put my cigarette out and went
> back to my office.
>
> I guess she finished her cigarette, because within a few minutes she came
> up to the office. And I said, here, check this out.  And I went into the e-
> mail and opened the e-mail and flipped up the attachment, which was on
> the computer screen, and said Check this out.  And she went, Wow.  She
> says, Cool.
>
> I said Yes, it's something.  Amazing what people do.  I clicked it off.  She
> said, Later.  I said, See you later.  And she left.

Nahrwold Depo. at 20-22.

Assuming for purposes of this discussion that the picture of the motorcycle and/or

the circumstances under which Nahrwold showed it to Plaintiff was not appropriate and/or was

offensive, the Court finds and rules that Plaintiff's claim of hostile work environment involving

Nahrwold is limited to a single isolated event. This evidence falls far short of establishing a

regular pattern of discrimination by a supervisor at Triangle Circuits.


2.      Respondeat Superior Liability of Employer for Conduct of Co-Workers

The standard to establish sexual harassment by a co-worker proceeds under a theory

of respondeat superior. *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1478 (3d Cir. 1990).

"Liability exists where the defendant knew or should have known of the harassment and failed to take prompt remedial action." *Id.* at 1486.

Plaintiff alleges that over an approximately four month period, from November 2001 until her resignation in March 2002, she endured sexual harassment in the form of sexually harassing remarks and suggestive overtones "on a daily basis." Complaint, at ¶ 14. However, by Plaintiff's own admission she <u>never</u> reported any of the alleged offensive conduct of her co-workers to a supervisor, manager, human resources personnel or a co-worker, prior to May 8, 2002 when she reported to Skelley over the telephone that she had been "sexually harassed." *See* Valenti depo, at 66 88, 96, 99. The uncontroverted summary judgment evidence further shows that Plaintiff did not return the multiple phone calls of Skelley nor did she return to work on March 11, 2002, as directed by Skelley so that they could "talk about this situation in more detail. . . . ."

Moreover, the evidence is undisputed that Triangle Circuits had in place during the relevant time a policy against sexual harassment which defined sexual harassment, advised employees to promptly report sexual harassment, contained procedures for the reporting of complaints, and allowed complaints to be made to persons other than the complaining employee's immediate supervisor. It is also undisputed that the policy was published in both Employee Handbook I and II.

Accordingly, the Court finds and rules that the evidence presented by Plaintiff is insufficient to prove that management-level employees had actual or constructive knowledge about the existence of a sexually hostile environment and/or that Triangle Circuits failed to take prompt and adequate remedial action. *Andrews*, 895 F.2d at 1469. To the contrary, the Court

11

finds and rules that the undisputed record evidence shows that once Plaintiff informed Skelley of her sexual harassment allegations, Skelley, on numerous occasions, attempted to talk to Plaintiff to find out more information regarding Plaintiff's sexual harassment allegations; however, Plaintiff never returned Skelley's phone calls.

## CONCLUSION

For all these reasons, the Motion for Summary Judgment filed by Defendants will be granted. An appropriate Order follows.

McVerry, J.

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| LISA A. VALENTI, | ) |
| | ) |
|                 Plaintiff, | ) |
| | ) |
|             v. | )      02:03cv0748 |
| | ) |
| TRIANGLE CIRCUITS OF PITTSBURGH, | ) |
| INC.; THE MILLENNIA GROUP, INC., | ) |
| t/d/b/a TRIANGLE CIRCUITS OF | ) |
| PITTSBURGH, | ) |
| | ) |
|                 Defendants. | ) |

**ORDER OF COURT**

AND NOW, this 26th of August, 2005, in accordance with the foregoing

Memorandum Opinion, it is hereby **ORDERED**, **ADJUDGED, AND DECREED** that the

Motion for Summary Judgment filed by Defendants Triangle Circuits of Pittsburgh, Inc. and

The Millennia Group, Inc., t/d/b/a Triangle Circuits of Pittsburgh is **GRANTED** and judgment

is hereby entered in favor of Triangle Circuits of Pittsburgh, Inc. and The Millennia Group, Inc.,

t/d/b/a Triangle Circuits of Pittsburgh.

                                         BY THE COURT:

                                         _____

                                         United States District Court Judge

cc:       Jeffrey L. Suher, Esquire
           Email: jsuherlaw@adelphia.net

           Alan T. Silko, Esquire
           Kirsten Erickson, Esquire
           Levicoff, Silko & Deemer
           Email: ASilko@LSandD.net